# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **LAWRENCE MOSLEY,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:03-cv-119(HL) |
| | : | |
| **JLG INDUSTRIES, INC., et al.,** | : | |
| | : | |
| Defendants. | : | |

_____

# ORDER

Before this Court are Plaintiff's Motion to Dismiss Without Prejudice (Doc. # 60) and Defendants' Motions for Summary Judgment.  (Doc. #'s 49, 50, 54.)  For the reasons set forth below, Plaintiff's Motion is denied and Defendants' Motions are granted.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff Lawrence Mosley contends he was injured while working on the job for his employer, Piedmont Engineering, when a piece of boom lift machinery he was operating malfunctioned. (Compl. ¶¶ 5-11.)  The accident occurred on September 16, 2001 (Compl. ¶ 5); he filed suit in the Superior Court of Cook County, Georgia, on September 15, 2003.  His action sought damages under various product liability theories, including strict liability and negligence, from a manufacturer of boom lift machinery, JLG Industries, Inc. (JLG), and two seller/renters of boom lift machinery, Rental Services Corporation (RSC) and Neff Rental, Inc. (Neff).  In

Plaintiff's Complaint, he alleged that JLG manufactured the boom lift in question, that the lift was not merchantable and that the injuries he suffered were a result of the defects in the boom lift.  (Compl. ¶¶ 14-20, 22-25.)  Plaintiff's Complaint further alleged that RSC and/or Neff placed the boom lift into the stream of commerce and breached their duty to Plaintiff by failing to properly install, repair and maintain the machinery, even though they knew its dangerous nature, which was the direct and proximate cause of the accident in question.  (Compl. ¶¶ 27-32.)  On October 16, 2003, Defendants properly removed the case to this Court on the basis of diversity of citizenship jurisdiction.  A protracted discovery process ensued.

On October 30, 2003, pursuant to this Court's Rules 16 and 26 Order, the Court ordered Plaintiff to make expert disclosures on or before January 22, 2004.  (Doc. # 14.)  That deadline came and passed without any expert disclosures by Plaintiff.  On February 20, 2004, Defendant JLG moved to preclude Plaintiff's use of expert testimony (Doc. # 24); RSC and Neff later joined this Motion.  (Doc. #'s 28, 29.)  In response, the Court held a March 10, 2004, telephone conference to address discovery issues.  During this phone call, Plaintiff's counsel, Jody D. Peterman, assumed responsibility for the delay and assured the Court that he would remedy the situation.  As a result, the Court extended discovery 90 days from April 23, 2004, and ordered Plaintiff to make expert disclosures on or before May 10, 2004.  (Doc. #'s 30, 33.)  Again, Plaintiff failed to make any expert disclosures on or before that date.

On July 19, 2004, Plaintiff moved to further extend the discovery period.  (Doc. # 45.) The Court granted this order on July 23, 2004, extending the period for general discovery by an

2

additional 45 days, while noting it did not expect to further extend discovery.  (Doc. # 46.)  The

Court's July 23, 2004, Order did not extend the deadline for expert disclosure.  Subsequently,

on August 9, 2004, the Court granted Defendants' Motions in Limine to preclude expert

testimony based on Plaintiff's repeated failure to disclose experts within the allotted, and

extended, time period.  (Doc. # 48.)  The discovery period ended September 7, 2004.

Defendants filed Motions for Summary Judgment in October 2004  (Doc. #'s 49, 50,

54), contending that Plaintiff could not make a prima facie case against any Defendant.

Specifically, Defendants noted that despite a discovery period of more than ten months, Plaintiff

had failed to identify the specific boom lift he alleged was defective; he had failed to prove that

this boom lift did, in fact, malfunction; and he had failed to present any expert testimony to

prove a defect existed in the boom lift.  Defendants argued that because Plaintiff was unable to

establish these fundamental elements of a product liability claim, they were entitled to summary

judgment as a matter of law.  In response, Plaintiff sought additional time to respond to these

Motions.  (Doc. # 58.)  The Court denied this Motion, noting,

> [t]he Court sees this as yet another example of Plaintiff's counsel's inability to
> meet deadlines and his failure to act in a timely manner.  Additionally, the Court
> is mindful that denying the Motion may harm Plaintiff's case.  While this may be
> an unfortunate and seemingly unfair result, Plaintiff must be held accountable for
> his counsel's failures and their ramifications.

(Order of November 18, 2004 at 3.)

Thereafter, Plaintiff filed a Motion to Dismiss Without Prejudice (Doc. # 60), admitting

that he could not survive Defendants' pending Motions for Summary Judgment but asking the

3

Court to grant his Motion under Federal Rule of Civil Procedure 41(a)(2).  Defendants filed

Responses to Plaintiff's Motion to Dismiss Without Prejudice, arguing that they would suffer

legal prejudice if the Court were to grant Plaintiff's Motion due to the considerable time and

expense they had incurred in defending Plaintiff's claims, which they also contended had never

been shown to have any merit.

## II.    ANALYSIS

### A.    Federal Rule of Civil Procedure 41(a)(2)

Plaintiff requests the Court grant his Motion to Dismiss Without Prejudice pursuant to

Federal Rule of Civil Procedure 41(a)(2), which authorizes voluntary dismissal without

prejudice "upon order of the court and upon such terms and conditions as the court deems

proper."  Summarizing the proper application of this rule, the Eleventh Circuit has explained,

> A voluntary dismissal without prejudice is not a matter of right.  Although we
> have said that in most cases a voluntary dismissal should be allowed unless the
> defendant will suffer some plain prejudice other than the mere prospect of a
> second lawsuit, the decision whether or not to grant such a dismissal is within the
> sound discretion of the district court and reviewable only for abuse of discretion.
> And, when exercising its discretion in considering a dismissal without prejudice,
> the court should keep in mind the interests of the defendant, for Rule 41(a)(2)
> exists chiefly for protection of defendants.

Fisher v. P. R. Marine Mgmt., 940 F.2d 1502, 1502-03 (11th Cir. 1991) (citations omitted).

"The crucial question to be determined is, would the defendant lose any substantial right by the

dismissal."  Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1255 (11th Cir. 2001)

(citation omitted).

The Eleventh Circuit has not explicitly adopted a list of factors that a trial court should

4

consider when determining whether a defendant would suffer "plain prejudice" versus the "mere prospect of a second lawsuit." Id.[1]  Instead, cases within this Circuit have emphasized a trial court's broad discretion when deciding whether or not to grant a motion to dismiss without prejudice and its power to operate freely within a zone of choice.  See, e.g., id.; Fisher, 940 F.2d at 1503.  Decisions in which trial courts have denied a plaintiff's request to dismiss a case without prejudice have hinged on various factors as the courts sought "to weigh the relevant equities and do justices between the parties."  See, e.g., Stephens v. Ga. Dep't of Transp., 134 Fed. Appx. 320, 323 (11th Cir. 2005) (finding the two years between plaintiff's filing her complaint and her motion to dismiss, the numerous motions filed and discovery produced within that time and defendant's pending motion for summary judgment constituted prejudice to defendant and justified the court's denial of plaintiff's motion to dismiss without prejudice); Fisher, 940 F.2d at 1503 (finding the time and expense already spent by defendant on discovery and trial preparation, the late nature of plaintiff's filings and the potential negative effect on witnesses' memories constituted plain prejudice to defendant and justified the court's denial of plaintiff's motion to dismiss without prejudice); Witbeck v. Embry Riddle Aeronautical Univ., 219 F.R.D. 540, 542 (M.D. Fla. 2004) (finding the combination of defendant's expenditure of

---

[1] By contrast, a number of other circuit courts have adopted a list of factors to guide trial courts deciding whether to grant motions to dismiss without prejudice.  These include "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant."  Pace v. S. Express Co., 409 F.2d 331, 334 (7th Cir. 1969); see also Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994); Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996).  In Potenberg, the Eleventh Circuit simply noted "this circuit has never specifically addressed or adopted the Pace factors."  252 F.3d at 1259.

substantial resources, prior court extensions on plaintiff's behalf and defendant's pending summary judgment motion constituted sufficient prejudice to defendant to justify a denial of plaintiff's motion to dismiss without prejudice).

In Defendants' Responses to Plaintiff's Motion to Dismiss Without Prejudice, they maintain they have incurred considerable time and expense defending Plaintiff's claims. The Court has no reason to doubt Defendants' assertions—more than three years have passed since this case was initially brought, numerous motions have been filed and discovery has been produced. In addition, the Court has extended discovery numerous times on Plaintiff's behalf and at his request, to no avail. Despite assurances and excuses, Plaintiff has failed to produce enough evidence to sustain even a prima facie case against Defendants, including his failure to ever produce any expert testimony. Moreover, Defendants' Motions for Summary Judgment were pending when Plaintiff filed his Motion to Dismiss Without Prejudice. Plaintiff's Motion can only be construed as solely motivated to avoid an expected adverse ruling on Defendants' summary judgment motions. In fact, Plaintiff admits as much in his Motion, confessing "[a]fter careful review of the affidavits filed by each Defendant, it is clear that Plaintiff cannot survive Defendants' Motions for Summary Judgment in this action." (Plaintiff's Motion to Dismiss Without Prejudice at ¶ 1.)

The Court enjoys broad discretion when considering whether to grant motions to dismiss without prejudice. Plaintiff is not entitled to such a dismissal as a matter of right. The Court is satisfied Defendants would be prejudiced by such a dismissal, based on the combination of

the aforementioned factors and the late stage of this case.  Accordingly, the Court denies Plaintiff's Motion.   Having denied Plaintiff's Motion to Dismiss Without Prejudice, the Court must now rule on Defendants' Motions for Summary Judgment.

### B.    Summary Judgment

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).  The Court may not, however, make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law.  Celotex, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party meets this burden, the burden then shifts to the nonmoving party

to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26.  This evidence must consist of more than mere conclusory allegations.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

Here, Plaintiff's Complaint alleges: (1) strict liability against JLG for a defective product; (2) negligence against JLG for a defective product; (3) negligence against RSC and Neff for a defective product; and (4) punitive damages against all three defendants as necessary and appropriate.  Defendants have moved for summary judgment on all claims.

### 1.    Strict Liability Claim Against JLG

Count One of Plaintiff's Complaint alleges JLG is strictly liable for placing into the stream of commerce a product that was unreasonably dangerous because of manufacturing or design defects.  To properly establish a product liability claim for strict liability in Georgia, a plaintiff must prove that defendant is the manufacturer of the property, that "the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold [wa]s the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1) (2004); see also Chicago Hardware & Fixture Co. v. Letterman, 510 S.E.2d 875, 877-78 (Ga. Ct. App. 1999).  At a minimum,

> [t]o survive summary judgment, [Plaintiff] clearly needs to present evidence that [he] was exposed to defendants' products.  Under Georgia law, whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a product liability case.  We have held that unless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery.  A manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else.

Hoffman v. AC&S, Inc., 548 S.E.2d 379, 382 (Ga. Ct. App. 2001) (citations omitted).

The record is devoid of any evidence demonstrating JLG manufactured the boom lift allegedly involved in the accident.  Both in interrogatories and his deposition, Plaintiff has been unable to identify the manufacturer of the boom lift at all, much less implicate JLG.[2]  The record is further devoid of any evidence demonstrating any manufacturing or design defect with any boom lift, much less one manufactured by JLG.  Finally, the record contains no evidence that any design or manufacturing flaw in a JLG boom lift was the proximate cause for any injury suffered by Plaintiff.

Defendants' Motions for Summary Judgment establish Plaintiff has not identified JLG as the manufacturer of the boom lift in question, nor proven any defect in that boom lift, nor proven that said defect was the proximate cause of his injury.  Plaintiff has filed no reply to Defendants' Motions for Summary Judgment; instead, he conceded in his Motion to Dismiss Without Prejudice that "[a]fter careful review of the affidavits filed by each Defendant, it is clear that Plaintiff cannot survive Defendants' Motions for Summary Judgment in this action."

---

[2] Documents produced by RSC identify a boom lift used by Piedmont Engineers that was manufactured by "Genie Industries."  The Court makes no finding about the accuracy of this identification beyond noting that the documents do not reference JLG in any manner.

(Plaintiff's Motion to Dismiss Without Prejudice at ¶ 1.)   Accordingly, Defendant JLG is entitled to summary judgment as to Count One.

### 2.  Negligence Claim Against JLG

Count Two of Plaintiff's Complaint alleges JLG is liable for negligently placing into the stream of commerce a product that was unreasonably dangerous because of manufacturing or design defects.  To properly establish a product liability claim for negligence in Georgia, a plaintiff must prove

> (1) a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risk; (2) a failure on his part to conform to the standard required; (3) a reasonable close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the other.

Marquis Towers, Inc. v. Highland Group, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004).  "Georgia case law has typically assumed that a strict liability design defect claim carries the same elements as a negligence claim aimed at the same alleged shortcomings in the product.  In . . . product design case[s], only semantics distinguish the cause of action for negligence and a cause of action [for strict liability]."  Jones v. Amazing Prods., 231 F. Supp. 2d 1228, 1238 (N.D. Ga. 2002).  One key similarity, as mentioned above, is that, "[u]nder Georgia law, whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a product liability case.  We have held that unless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery."  Hoffman, 548 S.E.2d at 382.

10

Again, Defendants' Motions for Summary Judgment establish Plaintiff has not identified JLG as the manufacturer of the boom lift in question, nor proven any defect in that boom lift, nor proven that said defect was the proximate cause of his injury. Plaintiff's negligence claim against JLG is as deeply flawed as his strict liability claim. Accordingly, summary judgment is granted as to Count Two.

### 3.    Negligence Claims Against RSC and Neff

Count Three of Plaintiff's Complaint alleges RSC and Neff are liable because one or both negligently placed into the stream of commerce a product that was unreasonably dangerous because of manufacturing or design defects. As noted previously, to properly establish a product liability claim for negligence in Georgia, a plaintiff must prove

> (1) a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risk; (2) a failure on his part to conform to the standard required; (3) a reasonable close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the other.

Marquis Towers, 593 S.E.2d at 906.

As discussed above, Plaintiff has been unable to identify the specific boom lift involved in this accident. Therefore, Plaintiff cannot establish any relationship between RSC or Neff and the boom lift in question—nor, obviously, any resulting duty these Defendants owed Plaintiff. Because Plaintiff is unable to establish any of the four elements of negligence as they relate to either Defendant, summary judgment is granted as to Count Three.

11

**4.     Punitive Damages Claim Against JLG, RSC and Neff**

Count Four of Plaintiff's Complaint alleges all three defendants are liable for punitive damages because of their actions and conduct towards the general public and Plaintiff in particular.  In Georgia, punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b) (2000).  Georgia courts construing this Code provision have consistently recognized that a claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach, and that punitive damages may not be recovered if there is not entitlement to compensatory damages.  See, e.g., Nelson & Hill, P.A. v. Wood, 537 S.E.2d 670, 677 (Ga. Ct. App. 2000); S. Gen. Ins. Co. v. Holt, 416 S.E.2d 274, 276-77 (Ga. 1992).  See also Bryne v. Nezhat, 261 F.3d 1075, 1093 n.34 (11th Cir. 2001) (noting that "a prayer for punitive damages is not an independent cause of action").

Here, Plaintiff's claim for punitive damages stems from his claims for product liability under Counts One, Two and Three.  Plaintiff has made no showing, by clear and convincing evidence or any other standard, that Defendants acted with willful misconduct, malice, fraud, wantonness, oppression or entire want of care.  Furthermore, the Court has already concluded that Plaintiff has not stated a valid claim for actual damages under any of his three substantive claims.  Therefore, no claim exists to which a punitive damages claim can attach.  As a result,

summary judgment is granted as to Count Four.

**III.   CONCLUSION**

Plaintiff's Motion to Dismiss Without Prejudice (Doc. # 60) is denied.  Defendants' Motions for Summary Judgment (Doc. #'s 49, 50, 54) are granted.  Let judgment be entered accordingly.

The Court also orders Plaintiff's attorney, Jody D. Peterman, to certify to the Court within five days of this date that he has delivered a copy of this Order to his client, Lawrence Mosley.

SO ORDERED, this the 20th day of September, 2005.

<u>s/  **Hugh Lawson**</u>
HUGH LAWSON, JUDGE


pdl